FIRST NAT. BANK OF POST v. REPUB-
LIC SUPPLY CO. et al.

No. 2302.

Court of Civil Appeals of Texas. Eastland.
Oct. 30, 1942.

Rehearing Denied Dec. 4, 1942.
Second Motion for Rehearing Denied
Jan. 15, 1943.

E. L. Klett, of Lubbock, for appellant.

Coffee & Coffee, of Big Spring, for appellees.

FUNDERBURK, Justice.

Magnolia Petroleum Company by written instrument referred to as "purchase letter" dated February 23, 1938, upon specified conditions and contingencies, obligated it-self to pay to L. G. Stogner $50 per acre for a lease supposed to contain 160 acres, but in fact containing 162 acres. Such promised payment was conditioned, among other things, upon the completion within six months of a well upon a lease owned by Stogner in Ector County to a depth of 4500 feet, unless oil and gas, or either of them, were found in paying quantities at a lesser depth. One provision of said "purchase letter" was that "neither said agreement nor any rights nor payments due hereunder shall be transferred or assigned by you [Stogner] without the written consent of one of our duly authorized vice-presidents at Dallas, Texas."

The next day (February 24, 1938) Stogner made a contract with Mixon and Rich-

ards to drill the well contemplated in said purchase letter, agreeing to pay said contractors, in part consideration for their services, $12,000 in cash upon the completion of the well. The drilling contract, which designated Stogner as owner and the firm of Mixon and Richards as contractor, provided in part as follows: "As security for the payment of said sum of $12,000.00, Owner hereby transfers and assigns to Contractor the consideration to be paid by Jack M. Buckler to Owner in the amount of $4000.00 for acreage purchased around said well and which said sum is held in escrow by the First National Bank of Fort Worth, Texas, and as evidenced by a purchase letter and agreement of this date between the said Jack M. Buckler and Owner; and Owner likewise, for the same purpose, transfers and assigns to Contractor the consideration in the sum of $8000.00 to be paid Owner by Magnolia Petroleum Company for acreage purchased by it from Owner around said well and as evidenced by the purchase letter of said Company dated February 23, 1938, * * *".

Another provision of the drilling contract was as follows: "Contractors shall protect Owner and save him harmless against all claims for damages of any nature whatsoever arising out of or in connection with the drilling of said well, and the well provided for herein and all material used in connection with it, and the land upon which said well is drilled and the leasehold estate covering the same shall at all times be maintained by Contractor free of all liens and/or encumbrances of any nature whatsoever arising out of, or in connection with, the drilling of this well, or otherwise, and before making any payments to Contractor hereunder, or delivery of said assignments, Owner shall have the right to demand and receive proof from Contractor and satisfy himself that no such claims, liens, lien rights or encumbrances exist."

The day following the date of said drilling contract (February 25, 1938) Mixon and Richards, in writing, assigned said Magnolia Petroleum Company purchase letter to the First National Bank of Post, describing the subject matter of such assignment as: "any and all our interest, together with all money from the said L. G. Stogner as covered by the Magnolia Petroleum Company lease purchase letter dated February 23, 1938, * * *. We hereby authorize the said L. G. Stogner and the Magnolia Petroleum Company to pay to the First National Bank of Post, Post,

Texas, all money due on the above mentioned purchase letter of the Magnolia Petroleum Company. This assignment is the first and only assignment given by the said Mixon and Richards on the Magnolia Petroleum Company purchase letter dated February 23, 1938, for $8000.00." A few days later (March 3, 1938), Mixon and Richards wrote a letter to the First National Bank of Post saying:

"This will be your authority to pay to the Republic Supply Company, or their order, the sum of Fifteen Hundred Dollars ($1500.00) for supplies furnished in drilling the T. G. Hendrick well No. 1, for which you have been assigned purchase order from the Magnolia Petroleum Company in the amount of Eight Thousand Dollars ($8000.00).

"It is understood that the above order will be paid by you if, as, and when this well is completed and money is collected by you from the Magnolia Petroleum Company".

Acceptance of this order was noted at the bottom in words as follows: "Accepted by (S) Ira L. Duckworth". Previous correspondence in relation to the same subject showed that Duckworth was cashier of said bank, to whose attention the letter had been directed by the notation: "Attention Ira Lee Duckworth".

The well having been completed to the specified depth, the Magnolia Petroleum Company issued its check as provided in said purchase letter in the sum of $8100, making it payable, however, to L. G. Stogner, Mixon and Richards, and the First National Bank of Post and delivered it to Stogner. Upon presentation of said check endorsed by all the payees, payment of the $8100 was made to said bank.

This suit by Republic Supply Company against said Bank and Mixon and Richards (the latter sued as partners) seeks recovery of the sum of $1,416.22 for supplies sold to Mixon and Richards in reliance upon said accepted order and used in the drilling of said well.

The Bank filed a plea of privilege and otherwise answered subject to same. Mixon and Richards made no appearance. By agreement the plea of privilege was tried with the merits of the suit, without a jury. The court overruled the plea of privilege and gave judgment for Republic Supply Company as prayed. The bank has appealed.

Appellant, which we shall continue to refer to as "the Bank", predicates the appeal upon seven points. The seventh point is the only one relating to the action of the court in overruling the plea of privilege. Immediately following the statement of the seventh point is the following: "Note. This assignment is waived and not to be considered by the court in the event the court is of the opinion the judgment of the trial court should be reversed and rendered upon one or more of the preceding assignments." In the opinion of a majority of our members, error, if any, relating to the plea of privilege should be held to have been waived. Our duty in the absence of request to do otherwise would be to pass upon the point relating to the plea of privilege first, and if it were determined that the court erred in overruling it all other questions relating to the merits of the case would, in this appeal, be rendered moot. Appellant expressly waives the seventh point, but attaches a condition to such express waiver. The condition involves a matter of public interest or public policy with which it is believed the condition is inconsistent. It is believed to be not conducive to the public welfare that an appellate court employ its time determining numerous questions regarding the merits of a case only in order to determine if there exists a condition attached to an express waiver of a plea of privilege. One of the legions of definitions of waiver is: "To relinquish intentionally a known right or intentionally do an act inconsistent with claiming it". 67 C.J. page 288. "Accordingly", says the same authority, "waiver may not be intended in fact, but may arise from the acts of the party, the intent to waive may appear as a legal result of conduct". Id. page 303.

The proper time for appellant to assert its right to a review of the trial court's action in overruling the plea of privilege was before it asserted its right to a reversal of the judgment on the merits of the case. "It has been said, relative to practice, that every failure to assert a legal right at the proper time is a waiver of that right". 67 C.J. page 307, § 7.

More could be said in support of the conclusion of the majority, but since we are not unanimous in such conclusion, we have looked further to determine whether, in our opinion, the point, if not waived, should be sustained and we are unanimous in the view that no error is shown. M. L.

Richards, one of the defendants, was a resident of Howard County. Appellees' controverting plea to the plea of privilege incorporated as a part thereof the allegations of its petition showing a cause of action against M. L. Richards (and J. H. Mixon) of such nature that the cause of action alleged against the Bank was properly joined, thus showing the Bank to be a proper party. The evidence, we think, supported the alleged cause of action against M. L. Richards, the resident defendant, thereby sustaining the venue under Exception 4, of R.S.1925, Art. 1995, which was the exception relied upon for such purpose. Compton v. Elliott, Tex.Civ.App., 55 S.W.2d 247; Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300.

Appellant's points 1 to 5, inclusive, seem to us to depend for their validity upon a different kind of contract, or basis of the Bank's liability, than that implicit in the statement of appellees' cause of action. It may be granted that as contended the cashier would have no implied authority to obligate · the Bank to pay for supplies furnished contractor to drill an oil well for another; or that such a contract would be ultra vires, and if ultra vires no waiver could be interposed as a defense in the absence of pleadings tendering such defense; or that such a contract would be without consideration; and yet, it would not follow, necessarily, that the cashier would be without implied authority to bind the Bank by the agreement relied upon to establish the Bank's liability. The cashier by accepting the order committed the Bank to pay $1,500 to Republic Supply Company, which but for such order the Bank would be under legal liability to pay to Mixon and Richards. As we see it, the authority of the cashier to bind the Bank to such a promise would be of the same nature as his authority to bind the Bank to the payment of a draft drawn upon it by accepting it upon due presentation; and further, that the effect of such action would not be subject to attack upon the ground that it was ultra vires or without consideration.

Appellant's sixth point has given us considerable difficulty. It is as follows: "The conditional promise of Bank holding first lien for $5500.00 on Magnolia purchase letter of $8000.00 to pay Supply Company second lien for $1500.00 *'if as and when'* Bank collected said $8000.00 created no personal liability against Bank where Bank only collected enough to satisfy its first

lien". Viewing the point as a proposition, its soundness may be granted. The difficulty is to determine whether in all essential respects it is supported by the record.

The Bank held the legal title to the $8,000 as evidenced by the purchase letter, due by Magnolia Petroleum Company upon completion of the well, and two written assignments thereof. By the purchase letter the debt was due originally to Stogner; but with the written consent of a vice-president of Magnolia Petroleum Company in Dallas was assignable. The debt was in fact assigned by Stogner by a provision of his drilling contract with Mixon and Richards. Such assignment was for the purpose of partly securing Stogner's obligation to the contractor to pay $12,000 for drilling the well. By provision of the contract Stogner had the right to withhold delivery of the assignment to enforce his "right to demand and receive proof from Contractor and satisfy himself that no such [as previously mentioned] claims, liens, lien rights or encumbrances exist". But the assignment was delivered, since it appears that the next day (February 25, 1938) in pursuance of a further assignment of the purchase letter, in writing, from Mixon and Richards to the Bank the purchase letter itself was delivered to the Bank. The Bank, at the request of Richards, transmitted the purchase letter and the drilling contract to Republic Supply Company for their information, with directions to return same as the Bank held an assignment. Thus, presumably, Stogner had been assured that the claim and liens would be paid, or in any event waived such security therefor as his withholding the purchase letter from delivery would have been. On March 30, 1938, the Magnolia Petroleum Company having possession of the purchase letter presumably for the purpose of authorizing its assignment as therein provided, wrote to the Bank, saying: "We enclose herewith *your purchase letter* which has been formally approved by one of our vice-presidents at Dallas. This is being sent to you for your file." (Italics ours.) Thus was supplied evidence of Stogner's right to assign the purchase letter, thereby also perfecting legal title of the Bank to the $8,100.

While the Bank had legal title to the $8,100, as between the Bank and Mixon and Richards, the Bank held such legal title only as security for loans of the Bank to Mixon and Richards to enable the latter to drill the well. This fact rested in parol; and, therefore, did not affect the character of the Bank's title as being legal, rather than merely equitable. If and when the $8,100 was paid to the Bank, as it should have been according to the Bank's legal title, any excess over the amount due it by Mixon and Richards on loans would belong to Mixon and Richards. The Bank would be charged as a trustee of such excess. Mixon and Richards having in advance ordered such excess, to the amount of $1,500, to be paid to Republic Supply Company, the Bank by the acceptance of its cashier thereby promised both Mixon and Richards and Republic Supply Company that upon the contingencies enumerated it would pay $1,500 to the latter.

Appellee made prima facie proof of its alleged cause of action. It proved that the $8,100 was paid to the Bank. Fifty-five hundred dollars thereof was sufficient to discharge the loans due by Mixon and Richards to the Bank. There was a balance of $2,600. In the absence of the accepted order, the Bank would have been under the duty to pay that sum to Mixon and Richards. However, it could not pay $1,500 of said amount to Mixon and Richards because the latter's right thereto had by the accepted order passed to Republic Supply Company. In legal effect the Bank paid $2,500 of the excess over its loans to Mixon and Richards and, therefore, paid them $1,500 which it should have paid to Republic Supply Company.

The Bank contends that the $8,100 was not paid to it, but that only $5,500 of that amount was paid, all of which was required to discharge the loans. The evidence offered to support this claim is the fact that the Bank, upon the insistence of Stogner, paid $2,600 in order to obtain Stogner's endorsement and delivery to the Bank of the $8,100 check deemed necessary to enable the Bank to collect the check. Stogner's purpose in making such demand was to have said sum, to the extent of $2,500 thereof used in discharge of other debts of the contractor incurred in the drilling of the well. Under the drilling contract Stogner could have prevented the acquisition of rights by others in the purchase letter superior to his right, if any, to have the claims of certain creditors of the contractor discharged. He could have had the assignment placed in escrow, as, according to recitations of the contract, he did the $4,000 purchase letter of Buckler, but, as

said before, he delivered the Magnolia purchase letter to the contractor and the latter in turn delivered it to the Bank both under written assignments evidencing legal title. The Magnolia Petroleum Company was authorized to pay the $8,100 to the Bank. It was not authorized to pay it to any one else, except upon the Bank's order. The previous written assignments had all the legal force and effect, as protection to the Magnolia Petroleum Company that endorsement of the particular check by Stogner and Mixon and Richards could give. We think the Bank, with legal title, or right, to be paid the $8,100 could not just because the check tendered in payment, named others also as payees but whose rights had been already acquired by the Bank, pay $2,600 for endorsement and delivery of the check by those having no right to the same, and then upon collection of the check in the sum of $8,100, claim that it had only collected $5,500 on the check.

It is, therefore, our opinion the judgment should be affirmed. It is accordingly so ordered.